| JETERS, J.,
concurring.
I concur in the result reached by the majority but would reach that result for different reasons. The undisputed facts giving rise to this litigation clearly establish that Mr. Froisy suffered unnecessarily because of the false statements made by Dr. Salama to Dr. Elias. Although sympathetic to Mr. Froisy for his mistreatment, the trial court concluded that Dr. Salama’s actions did not violate the standard of care required of him as a psychiatrist. In other words, Dr. Salama did not commit medical malpractice when he conveyed to Dr. Elias the information related to him by Mrs. Froisy concerning Mr. Froisy’s mental state.
The majority proposes to affirm, concluding that the trial court did not err in determining that Mr. Froisy failed to establish the standard of care required of Dr. Salama. While I reluctantly agree with the result, I conclude that Mr. Froisy has no cause of action against Dr. Salama in medical malpractice because the whole concept of medical malpractice presupposes a doctor/patient relationship. See La.R.S. 40:1299.41(A)(8). No doctor/patient relationship exists between Dr. Sala-ma and Mr. Froisy.
The matter before us involves a coroner’s commitment pursuant to La.R.S. |?28:53.2, which is only one of a number of ways an individual may lawfully be committed for mental health evaluation. Louisiana Revised Statute 28:53.2(A) authorizes the parish coroner to take an individual that is mentally ill or suffering from substance abuse into protective custody and have him transported to a treatment facility for immediate evaluation. The order is effective for seventy-two hours, during which time the individual must be examined and either released or admitted to a treatment facility. La.R.S. 28:53.2(C).
Issuance of such a protective custody order is predicated on receipt by the coroner of the written statement of “a peace officer or other credible person ... specifying that, to the best of his knowledge and belief, the person is mentally ill or suffering from substance abuse and is in need of immediate treatment to protect the person or others from physical harm.” La.R.S. 28:53.2(A) (emphasis added). Any coroner or assistant coroner who acts in good faith in issuing a commitment order under this statute is granted civil immunity for his actions. La.R.S. 28:53.2(D). Others involved in the commitment process may claim immunity pursuant to the provisions of La.R.S. 28:63.
The trial court and the majority rely on La.R.S. 28:63(A), which provides medical malpractice immunity for a physician “exercising that degree of skill and care ordinarily employed, under similar circumstances by members of his profession in good standing in the same community or locality, and using reasonable care and diligence with his best judgment in the application of his skill.” However, as previously stated, Mr. Froisy was not Dr. Salama’s patient, and because of that fact, the doctor’s actions did not give rise to a medical malpractice action.
The question of Dr. Salama’s liability for Mr. Froisy’s mistreatment should be | ^evaluated under La.R.S. 28:63(C), which states:
Any person who acts in good faith to assist in the apprehension or taking into protective custody and examination of a patient will not be subject to civil or criminal penalties. However, a person who willfully advises or participates in the making of a false application or certificate shall be imprisoned with or without hard labor for not more than two *1249 years or fined not more than ten thousand dollars, or both.
(Emphasis added).
Had the doctor/patient relationship existed, it would be difficult for me to conclude that Dr. Salama did not violate the standard of care of his profession by relating false information to another physician, despite the testimony in the record to the contrary. However, I believe this section requires that we consider his actions in light of a good faith standard that might be applicable to any person and separate that standard from his professional standard.
The question of good faith is factual in nature and therefore subject to the manifest error standard. The evidence is in conflict concerning what Dr. Salama remembers stating to the assistant coroner and what the coroner remembers. The trial court seems to have accepted the self-serving testimony of Dr. Salama and not the testimony of the assistant coroner. Although I might disagree with this assessment, the trial court’s conclusion does not rise to the level of manifest error.
Thus, I concur in the result reached by the majority in this matter and would affirm the trial court’s judgment.